HARDEE v. ALEXANDER. (No. 6994.)

(Court of Civil Appeals of Texas. Galveston. Dec. 2, 1915. Rehearing Denied Dec. 23, 1915.)

1. TENANCY IN COMMON ⬅⬅38 — MUTUAL RIGHTS OF TENANTS — ACQUISITION OF WHOLE TITLE—PLEADING.

Pleadings *held* insufficient to remove a transaction by one of two tenants in common from the rule that a tenant in common who discharges an incumbrance against the common property acquires only an equitable lien, and not the whole title.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 100–104, 107–118; Dec. Dig. ⬅⬅38.]

2. TENANCY IN COMMON ⬅⬅33 — MUTUAL RIGHTS—AGREEMENTS FOR DEFAULT.

Where an agreement of tenants in common was that in case of default by either in payments for the common property the one paying should take the whole title, the forfeiture could not be effected unless one party defaulted in all payments due by him, since any other construction would be inequitable.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 25; Dec. Dig. ⬅⬅33.]

3. EQUITY ⬅⬅65—TENANCY IN COMMON ⬅⬅ 33—MUTUAL RIGHTS — EQUITABLE RELIEF.

Where a tenant in common refused to permit a sale of the property to which he had agreed, thereby preventing his cotenant from making payments, he could not have the equitable relief of forfeiture of his cotenant's interest to him under their contract providing for forfeiture of the rights of either to the other in case of default in payments, under the maxim that he who comes into equity must come with clean hands.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. ⬅⬅65; Tenancy in Common, Cent. Dig. § 25; Dec. Dig. ⬅⬅ 33.]

Error from District Court, Harris County; Norman G. Kittrell, Special Judge.

Action by C. A. Alexander against Mrs. V. D. Hardee. From a judgment for plaintiff, defendant brings error. Reversed and remanded.

Stevens & Stevens and A. R. & W. P. Hamblen, all of Houston, for plaintiff in error. M. G. Fakes, of Houston, for defendant in error.

PLEASANTS, C. J. This suit was brought by appellee against appellant to have the title conveyed to defendant by two deeds executed to plaintiff and defendant, and conveying to them two tracts of land aggregating 744 acres, declared a trust in favor of plaintiff and have said title vested in plaintiff.

Plaintiff's petition alleges, in substance, that in March, 1911, he and the defendant agreed to purchase and did purchase a tract of 300 acres of land from the First National Bank of Victoria, Tex., for the consideration of $227 in cash, and $207.11 to be paid in 6 months, $207.12 to be paid in 12 months, $621.37 to be paid in 24 months, and $621.40 to be paid in 36 months, and also purchased from the firm of A. Levi & Co. a tract of 444 acres of land, the consideration being $321 in cash, and the following deferred payments, to wit: $292.89 payable in 6 months, $292.18 payable in 12 months, $878.63 payable in 24 months, and $878.60 payable in 36 months; that all of said notes for the purchase price of said two tracts of land were executed by the plaintiff and defendant jointly, and were secured by a lien upon the land, and bear 8 per cent. interest per annum, interest payable semiannually; that at the time of the purchase of said tracts of land on the 11th of March, 1911, the plaintiff and defendant entered into a written agreement by the terms of which the plaintiff was to make the

cash payment, and the defendant, Mrs. V. D. Hardee, was to take care of the first note for $500 due in 6 months, and that the remaining notes should be paid equally by the plaintiff and defendant; that the deeds to the property above set forth were taken in the joint names of plaintiff and defendant; that in case either party should default in their payments as aforesaid the party paying would derive all of the benefits from the purchase of the lands. The plaintiff further alleged that the defendant had made no payments upon the land, and that she had cut timber therefrom of the value of $105, for which she had made no accounting, that the plaintiff has paid all of the notes to the First National Bank, with the exception of the last note of $621.40, and that he has paid all of the notes which were executed to A. Levi & Co., with the exception of the last note due them for $878.60, upon which he has paid $478.63. Plaintiff further alleged that whatever interest is shown on the face of said deeds, which were executed jointly to himself and Mrs. V. D. Hardee, as being vested in her, that the same is held by the latter. in trust for the plaintiff, and that the same constituted a dry trust, making now a full title in plaintiff to all of the lands. The plaintiff, in his petition, estimated the value of the land at $7 per acre. He prayed that the deeds, in so far as they were shown to vest any title in the defendant, Mrs. V. D. Hardee, be construed in favor of the plaintiff as being held by the defendant in trust, but that, in the event the defendant should have to pay any part of the notes outstanding against the lands so conveyed, the defendant be subrogated to all the rights in and to said notes as against said land. Plaintiff further asked for a personal judgment against the defendant for the value of the timber alleged to have been cut by her.

The defendant answered by a general demurrer and by special exceptions, setting up that the plaintiff was attempting to forfeit all of the rights of the defendant without placing the latter in statu quo, and further excepted to plaintiff's petition because it appeared therefrom that the plaintiff and the defendant were tenants in common, and that the plaintiff was seeking to forfeit the entire interest of the defendant in the land in controversy in violation of the equities which obtained between tenants in common. The answer admits the allegations of the petition as to the purchase price of the land, the execution of deeds to plaintiff and defendant, and the execution by them of the notes given for the purchase money. It denies that these notes have been paid by plaintiff, and also denies that the agreement between plaintiff and defendant was as alleged by plaintiff. (A copy of this agreement was attached to the answer and will be hereinafter set out.) The defendant further answered as follows:

"Defendant admits that she received about $100 stumpage on account of timber cut from said land, but alleges that this timber, together with an additional quantity of the value of $150, was cut by one Walker with the knowledge and consent of the plaintiff; that before she collected any of the amounts for said timber, and that after she collected the amounts due for said timber, she tendered the same to the plaintiff, who declined to receive the same; that the plaintiff agreed to collect the remaining amount of $150 due for said timber on an order from the defendant, but afterwards declined to do so, wherefore this defendant says that plaintiff has been negligent in failing and refusing to collect, according to the agreement, the said fruits and revenues of said land, amounting to the sum of $150, and applying the same to the purchase money of said land. In this connection the defendant denies that she refused to make any accounting of the sale of said timber to the plaintiff, or declined to pay him for the same, but that, on the contrary, the plaintiff, under the pretended claim that, if he should accept or collect any of the stumpage due by said Walker for cutting said timber, he would thus recognize defendant's interest in said land; whereas, as a matter of fact, the plaintiff has at all times recognized the interest of defendant in said land until he attempted to forfeit her rights by bringing this suit.

"This defendant says that she has not sufficient knowledge of which to form a belief as to the plaintiff having made great sacrifices in order to pay off the notes described in his petition, and this defendant denies that she is attempting to hold on to the deeds and abstract of title, and here now tenders the same into court to be delivered to the plaintiff.

"This defendant alleges that she performed valuable services in acquiring said land for the joint benefit of the plaintiff and herself at the price of $5 or $6 per acre; that said land at said time was worth much more than $5 or $6 per acre, and it is now of the value of not less than $10 per acre; that for this court to forfeit the interest which this defendant has in said land as a cotenant and her interest in the increased value thereof would be inequitable.

"Defendant alleges that she and the plaintiff purchased the land in controversy as tenants in common, and that, while the plaintiff may have paid more of the purchase price of said property than has been paid by the defendant, nevertheless the defendant was instrumental in acquiring said land at a price much less than its real value, to wit, approximately $5 or $6 per acre; that about the —— day of ——, 1912, this defendant, with the concurrence of the plaintiff, procured a purchaser for the timber upon said land at the sum of $1,500, the purchaser being one Haralson; that the plaintiff agreed that the purchase price for said timber was to be paid by said Haralson either in cash or one-third cash, and the balance to be paid in installments, and that said purchase money for said timber should be applied to the retirement of the vendor's lien notes outstanding against said land, which are described in plaintiff's petition; that, after defendant had obtained the sanction of the plaintiff to make the deal for said timber at said price and terms, she succeeded in getting the said Haralson to purchase the same, but that the plaintiff, disregarding his agreement to sell said timber, refused to comply with the same; that afterwards, to wit, on the —— day of March, 1914, the defendant obtained the plaintiff's consent to sell said timber upon the said land to A. E. Kerr and J. J. Balderack, of Dayton, Tex., for the sum of $1,700, it being understood that the said purchase money for said timber should be applied to the extinguishment of the said vendor's lien notes outstanding as aforesaid against said land, but that after this defendant had procured the said Kerr and Balderack as purchas-

ers at the price named the plaintiff refused to comply with his agreement and to apply said purchase money for said timber to the payment of said notes; that either of the aforesaid sales of said timber would have been advantageous and a good price for the same, and would have enabled this defendant to have participated in the payment of said notes by using the fruits of said land for that purpose; that the plaintiff by his act in failing to comply with either of his aforesaid agreements to sell the said timber prevented this defendant from paying per pro rata of the purchase price of said land to the extent in the first instance of $750, and in the second instance to the extent of $850; that the timber on said land is not of much value, for the reason that it is known as 'cut-over land'; that it would have been good business judgment to have closed the deal for said timber under either one of the propostions and agreements above set forth; that the plaintiff, in refusing to join the defendant in selling said timber as aforesaid, and in failing to comply with his agreement to sell the same, as above set forth, prevented the defendant from acquiring her interest in said land in the way of the fruits and revenues thereof to the extinguishment of said vendor's lien notes.

"Wherefore the defendant says that the plaintiff is not entitled to ask for contribution against her to the extent of one-half of the value of the purchase price of said timber as aforesaid, and of this she puts herself upon the country."

The court overruled the defendant's exceptions to the plaintiff's petition touching the right of the plaintiff as tenant in common to forfeit the interest of the defendant without placing her in statu quo and adjusting the equities between the parties, to which action of the court the defendant excepted.

The case was tried before the court without the intervention of a jury; the court finding that the plaintiff was entitled to recover on all the matters as set out in his petition against the defendant.

The judgment of the court further "finds that the plaintiff and defendant purchased jointly the lands described in plaintiff's petition, and that at the time of taking the deeds to the lands the plaintiff and defendant entered into an agreement under which, if either party failed to meet his or her part of the obligation, the other should derive all benefit therefrom; the defendant binding herself to pay off the first notes. The court finds as a matter of fact that said defendant has never paid any portion of any of said notes, either principal or interest; that she has not paid anything toward getting several of the notes extended for which the plaintiff has been compelled to pay bonuses; that plaintiff has borne the whole burden of paying off and carrying said notes; that, as set out in said plaintiff's petition, he has paid off all the indebtedness due against said lands aforesaid, with the exception of the last note for $621.40, due the First National Bank of Victoria, and some $1,200 due on the third and fourth notes given A. Levi & Co.

"The court further finds that the defendant has unlawfully appropriated $100 for wood sold off aforesaid lands.

"Wherefore it is ordered, adjudged, and decreed by the court that all title in and to aforesaid lands above set out as vested in the defendant herein be divested out of her and vested in the plaintiff, C. A. Alexander, and he have all and full title thereto.

"It is further ordered, adjudged, and decreed by the court that said defendant, C. A. Alexander, shall pay off all the balance of the outstanding notes given for said land, he assuming all liability thereon; that in the event that said plaintiff shall fail to pay off any portion of said notes that she, the defendant, shall be subrogated to all the rights in and to said notes as against said land, and as against said plaintiff, in proportion to any moneys she may have to pay thereon.

"It is further ordered, adjudged, and decreed by the court that the plaintiff have judgment over against said defendant for $100, and for all costs of this suit."

At the time the land was purchased plaintiff and defendant executed the following agreement:

"Witnesseth that in the purchase of seven hundred and fifty-eight acres (758) of land out of the north half of the Reason Green survey, Liberty county, Texas, from A. Levi & Co. and the First National Bank of Victoria, Texas, for a consideration of forty-five hundred and forty-eight ($4,548.00) dollars, payable as follows: Five hundred and forty-eight ($548.00) dollars cash, and the balance on the following terms, to wit: One note due and payable in six months for five hundred ($500.00) dollars; one note due and payable in twenty-four months for fifteen hundred ($1,500.00) dollars; and the last note due and payable in thirty-six months for fifteen hundred ($1,500.00) dollars. All notes dated from date of deed, interest eight (8%) per cent., payable semiannually.

"It is understood and agreed that the said C. A. Alexander, party of the first part, is to make the first cash payment of five hundred and forty-eight ($548.00) dollars on the said land, and the said V. D. Hardee is to make the payment of first note due and payable in six months for five hundred ($500.00) dollars. The balance of said payments are to be paid when due equally by the said Alexander and Hardee, and all interest that may accrue. It is understood and agreed that, in case either party defaults in payments on their part of this contract, the one paying will derive all benefits therefrom.

"It is further understood and agreed that the said C. A. Alexander, party of the first part, is to sign deed for any amount over and above the total costs of said land to the said Alexander and Hardee at any time the said V. D. Hardee finds purchaser at price agreeable to her; all profits to be equally divided on sale of this land, after deducting all expenses.

"The purpose of this written agreement is to show that we, the said Alexander and Hardee, purchased this land for speculation purposes only."

Defendant has paid no part of the purchase-money notes given for the land, and plaintiff has paid all of said notes except those mentioned in the judgment of the court, aggregating the sum of $1,821.40; $600 of the amount paid by plaintiff was with borrowed money secured by deed of trust on the land, the amount still due on the land being between $2,400 and $2,500. The evidence shows that the land has enhanced in value since its purchase by plaintiff and defendant for $6 per acre, and is now worth $8 to $10 per acre. The undisputed evidence further shows that prior to the institution of this suit defendant, with plaintiff's consent, had contracted to sell the timber upon the land for $1,750, and had arranged to borrow on the land enough additional money to pay off the outstanding purchase-money notes. At that time a suit of trespass to try title, brought by plaintiff against the defendant, for the land, was pending in Liberty county. When the time came to carry out the arrangement

before stated which had been agreed to by plaintiff, the parties who were to purchase the timber and furnish the money to pay off the vendor's lien notes demanded that plaintiff dismiss his Liberty county suit. This he refused to do, and as a result defendant was unable to consummate her arrangements for the sale of the timber and loan of the money to take up the vendor's lien notes.

Plaintiff very candidly testifies to this agreement, and gives his reasons for refusing to carry it out. He says:

"I agreed last March with Mrs. Hardee to sell the timber to Mr. Balderack for $1,750, but he refused to accept it; and I agreed then to apply the proceeds to these outstanding notes. I figured that was where the money was going, to the outstanding notes. When the matter came up I insisted on the money being deposited with Mr. Fox, of the Houston National Exchange Bank, but before I did that I saw Mr. Balderack, and he said they would trade, and they put the matter up to Ross & Wood, and he refused to do anything unless the suit was dismissed. I had it in my power to have the suit dismissed. If it was dismissed, Balderack and Kerr's lawyer agreed to buy the timber; and if it was dismissed Mr. Penn agreed to furnish the money to take up what was due. I agreed to sell the timber to Kerr and Balderack and to take the loan from Mr. Penn if he would make it. I figured that I had been carrying the load for three years, and that was long enough. I agreed to all these things; I had the key to the situation, and I declined to dismiss the suit in order to pay the land out; that is a fact. I thought I would have to do that, but then I found out I could get the money without it, and I would not do it; that has been four months ago. I found I could get the money, and I refused to dismiss the suit."

It is unnecessary to set out or discuss the several assignments of error presented in appellant's brief in detail. Under appropriate assignments it is contended that neither the pleading nor the evidence is sufficient to sustain the judgment of the trial court forfeiting defendant's title to the land.

[1] We agree with appellant in this contention. The petition shows that plaintiff and defendant were tenants in common, and the allegations as to the agreement between plaintiff and defendant are not sufficient to take the case out of the general rule that a tenant in common who discharges an incumbrance against the common property only acquires an equitable lien on the interest of his cotenant to the extent of the cotenant's liability on the discharged incumbrance, and does not acquire title to the cotenant's interest. Moore v. Moore, 89 Tex. 29, 33 S. W. 217; Niday v. Cochran, 42 Tex. Civ. App. 292, 93 S. W. 1027.

[2] The allegation in the petition that the agreement under which the land was purchased provided "that in case either party should default in their payments, as aforesaid, that the party paying would derive all of the benefits from the purchase of the land aforesaid," is not an accurate statement of the agreement, which we have before set out. But, taking the allegation as true, we do not think it would sustain a forfeiture unless defendant had defaulted in all of her payments and plaintiff had paid the entire purchase money, and the facts alleged in the petition show plaintiff had not paid all of the notes. When we consider the agreement itself, we think it cannot be properly construed as providing for a forfeiture of title or that the parties so intended it. The purpose of the agreement, as stated therein, is to show "that the parties had purchased the land for speculative purposes only," and plaintiff expressly agreed to permit the defendant to sell the land when she could find a purchaser at a price satisfactory to her, provided such price was in excess of the cost of the land. When the agreement is considered as a whole the provision "that in case either party defaults in payments on their part of the contract the one paying will derive all benefits therefrom" cannot be given the construction placed upon it by the trial court and authorize a forfeiture of the defendant's title for her failure to pay her portion of the notes that have been paid. Under the construction placed upon the agreement by the trial court, if defendant had made all her payments but one, and plaintiff paid that one, defendant would lose her title to all interest in the land. No construction of a contract which would produce such inequitable results should obtain if the contract be susceptible of any other construction. As we have before said, we do not think a forfeiture could be based upon this provision of the contract, if at all, until there was default in all the payments. The evidence which we have before set out shows the agreement between plaintiff and defendant in regard to the sale of the timber and the loan of the money to pay off the purchase-money notes, and plaintiff's action in the consummation of the agreement should defeat his right to a forfeiture, if any he had.

[3] The admission of plaintiff that the land has greatly increased in value and that his reason for refusing to dismiss his suit, and thus enable defendant to carry out the agreement, was his desire to profit at the expense of his cotenant, does not accord with the rule of equity which requires that he who asks relief from a court of equity must come with clean hands. He cannot ask that defendant's title in the property be declared forfeited and vested in him because of defendant's failure to pay her portion of the purchase money for the land, when he admits that he has not kept his agreements with defendant in good faith, and that but for his refusal to carry out his agreement defendant would have been enabled to discharge her obligations in a large measure, at least, if not entirely.

It follows that the judgment of the court below should be reversed, and the cause remanded; and it has been so ordered.

Reversed and remanded.